**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
GEICO MARINE INSURANCE COMPANY,

                                    Plaintiff,                              **REPORT AND**
                                                                           **RECOMMENDATION**

                    -against-
                                                                           CV 19-3107 (SJF) (AKT)
LEE MANDEL,

                                    Defendant.
-------------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.      PRELIMINARY STATEMENT**

       Plaintiff GEICO Marine Insurance Company ("Plaintiff" or "GEICO") commenced this

insurance coverage action against Defendant Lee Mandel ("Defendant" or "Mandel") seeking a

declaratory judgment as to the rights and obligations of the parties under two successive marine

yacht insurance policies issued by Plaintiff to Defendant. *See generally* Complaint ("Compl.")

[DE 1].  Specifically, Plaintiff seeks a declaration that Defendant is not entitled to coverage

under the policies for any claims or losses arising from damage to the engines of Defendant's

vessel for which Plaintiff has not already indemnified Defendant. *See id.*  Defendant has

asserted counterclaims for breach of contract and bad faith. *See generally* Answer with

Counterclaims ("Countercl.") [DE 7].

       Pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), Plaintiff

now moves for partial summary judgment, which Defendant opposes. *See generally* Plaintiff's

Memorandum of Law in Support of its Motion for Summary Judgment ("Pl.'s Mem.")

[DE 13-1]; Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Summary

Judgment ("Def.'s Opp'n") [DE 13-6]; Plaintiff's Reply Memorandum of Law in Further

Support of its Motion for Summary Judgment ("Pl.'s Reply") [DE 13-31].  Judge Feuerstein

referred Plaintiff's Motion for Partial Summary Judgment to this Court for a Report and

Recommendation as to whether the motion should be granted.  *See* Electronic Order dated

December 6, 2019.  For the reasons set forth below, the Court respectfully recommends to Judge

Feuerstein that Defendants' motion for partial summary judgment be GRANTED in part and

DENIED in part.

II.    B‍ACKGROUND

 A. **Preliminary Issue**

 In accordance with Rule 56.1 of the Local Rules of the United States District Courts for

the Southern and Eastern Districts of New York, GEICO submitted a Statement of Material Facts

("Pl.'s SOMF") [DE 13-2], along with the declaration of Vincent Corteselli, a senior marine

insurance claims adjuster for GEICO ("Corteselli Decl.") [DE 13-3], in support of its motion.  In

opposing GEICO's motion, the Defendant submitted a "response" to Plaintiff's Rule 56.1

Statement of Material Facts ("Def.'s 56.1(b) Resp."), and Counterstatement of Additional

Material Facts ("Def.'s COMF")[1] [DE 13-7], with supporting exhibits.  Both parties properly cite

admissible evidence.  *See* Rule 56.1(d) ("Each statement by the movant or opponent pursuant to

Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must

be followed by citation to evidence which would be admissible.").

---

 [1] Defendant combined his Rule 56.1(b) response and "Statement of Additional Material Facts" into one document found at DE 13-7.  For the sake of clarity, the Court points out that Defendant responded "admitted" to 12 of the 13 Statements of Undisputed Material Facts in Plaintiff's Rule 56.1(a) Statement, denying only Statement No. 12.  Defendant then began his "Statement of Additional Material Facts," starting the numbered paragraphs again at 1.  The Court hereafter refers to the first section of DE 13-7 as "Def.'s 56.1(b) Resp." and the second section of DE 13-7 as "Def.'s COMF."

The Court notes that Rule 56.1 requires the nonmovant to "include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and *if necessary*, additional … statement of additional material facts as to which it is contended that there *exists a genuine issue to be tried*."  Rule 56.1(b) (emphasis added). Defendant's Rule 56.1 Counterstatement of Additional Material Facts does not appear to assert any facts for which a genuine issue of material fact remains to be tried nor does it serve to dispute the material facts asserted by GEICO.  Rather, Defendant's Counterstatement of Additional Material Facts recites in greater detail than GEICO does the events giving rise to the instant action and includes certain additional facts which were not asserted by GEICO.  *See generally* Def.'s COMF.  Nonetheless, instead of responding to Defendant's Rule 56.1 Counterstatement of Additional Material Facts, GEICO argues in its Reply that the Court should simply disregard these additional facts because they are not material to the instant motion.  *See* Pl.'s Reply at 8-9.

Having reviewed Defendant's Counterstatement of Additional Material Facts and supporting exhibits, the Court finds that several of these additional facts are either material to the issues raised in the instant motion or provide necessary context for the resolution of these issues. *See I.M. v. United States,* 362 F. Supp. 3d 161, 190 (S.D.N.Y. 2019) ("On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law."). As it relates to GEICO's failure to respond to these additional facts, the argument can be made that these facts should be deemed admitted by GEICO.  *See* Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by

the opposing party."); *Genova v. Cty. of Nassau*, No. 17-CV-4959, 2019 WL 8407451, at *1 (E.D.N.Y. Dec. 26, 2019), *report and recommendation adopted*, No. 17-CV-4959, 2020 WL 813160 (E.D.N.Y. Feb. 19, 2020) ("Because Plaintiff has failed to comply with Rule 56.1, the relevant facts, as set forth below, are deemed admitted by Plaintiff, and are therefore taken solely from Defendants' Rule 56.1 Statement."); *Luizzi v. Pro Transport Inc.*, No. 02-CV-5388, 2009 WL 252076, at * 2 (E.D.N.Y. Feb. 2, 2009) ("Where the party opposing a motion for summary judgment fails to submit a proper counter-statement of material facts, controverting the moving party's statement, courts have deemed the moving party's statement of facts to be admitted and have granted summary judgment in favor of the moving party on the basis of the uncontroverted facts.").  However, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co.*, 258 F. 3d 62, 73 (2d. Cir. 2001).  "Rather than rely on the parties' respective Local Rule 56.1 statements, a court 'may in its discretion opt to conduct an assiduous review of the record.'" *Chen v. Shanghai Cafe Deluxe, Inc.*, No. 17-CV-2536, 2019 WL 1447082, at *7 (S.D.N.Y. Mar. 8, 2019) (quoting *Holtz.*, 258 F. 3d at 73)*; see also Pensionsversicherungsanstalt v. Greenblatt*, 556 Fed. App'x 23, 25 (2d Cir. 2014) (Summary Order) (noting that "nothing requires a district court to deem evidence admitted, or grant summary judgment, simply because a non-movant fails to comply with local rules such as Local Rule 56.1").

Here, the Court has conducted an independent review of the record, including Plaintiff's Rule 56.1(a) Statements of Material Facts, Defendant's Rule 56.1(b) Responses to Plaintiff's Statement of Material Facts, Defendants' Counterstatement of Additional Material Facts, and affidavits submitted in connection with the instant motion, along with the exhibits attached to those affidavits.  From these, the Court references what it considers to be the undisputed facts or

4

facts uncontroverted by admissible evidence.  *See Truitt v. Salisbury Bank & Tr. Co*., No. 18-CV-8386, 2020 WL 4208452, at *1 (S.D.N.Y. July 21, 2020).  In doing so, the Court construes the facts in the light most favorable to the party opposing the respective motion.  *See Beyer v. Cty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008); *Capobianco v. New York*, 422 F.3d 47, 50 (2d Cir. 2001); *Coastal Pipeline Prod. of New York v. Gonzales*, No. 04-CV-8252, 2006 WL 473883, at *4 (S.D.N.Y. Feb. 28, 2006).

     **B.**     **The Undisputed Material Facts**

Defendant resides in and has an actual place of business in the State of New York. Answer ¶¶ 5, 7.  Defendant was the owner of a 52' SeaRay sedan bridge-model vessel bearing hull identification number SERP6372K405.  Pl.'s SOMF ¶ 1.  While Defendant owned the vessel, he obtained two successive one-year marine yacht insurance policies from Plaintiff GEICO (the "Yacht Policies").  *Id*. ¶ 2.  GEICO was formerly named "Seaworthy Insurance Company" and assumed the name "GEICO Marine Insurance Company" in 2015.  *Id*. ¶ 3.  While known as Seaworthy Insurance Company, GEICO issued the first of the two successive Yacht Policies to Defendant for the one-year period running from February 6, 2015 to February 6, 2016, which was assigned policy number SYP1039106-00 (the "2015-2016 Yacht Policy").  *Id.* ¶ 4.  GEICO and the Defendant renewed the coverage and GEICO issued the second of the two successive Yacht Policies for the period covering February 6, 2016 to February 6, 2017.  The second policy was assigned policy number SYP1039106-01 (the "2016-2017 Yacht Policy").  *Id.* ¶ 5.  Plaintiff delivered the Yacht Policies to Defendant in the State of New York.  Answer ¶ 13. Both Yacht Policies include a "Legal Action Against Us" clause, which provides, in pertinent part as follows:

> With respect to any claim or loss to insured property, the action must
> begin within one year of the date of loss or damage.  With respect to

any other claim or loss, no legal action may be brought against us until we agree in writing that the insured has an obligation to pay a specified amount, or until the amount of that obligation has been finally determined by judgment after trial.

Pl.'s SOMF. ¶ 7; *see* Corteselli Decl., Ex. 1 (2015-2016 Yacht Policy) [DE 13-4] at 11;

Corteselli Decl., Ex. 2 (2016-2017 Yacht Policy) [DE 13-5] at 11.

On December 29, 2015, Defendant first notified and reported a claim under the Yacht Policies for damage sustained to the starboard engine of his vessel.  Compl. ¶ 19; Answer ¶ 19. Between then and July 13, 2016, GEICO approved piecemeal repairs to the vessel's starboard engine and paid Defendant approximately $92,396.37 under the Yacht Policies for the costs incurred.  Pl.'s SOMF ¶ 8-9; Countercl. ¶ 62.  On July 13, 2016, Defendant reported a supplemental claim for damages to the starboard engine caused by a hairline crack in the cylinder that was missed during the initial repairs to the engine.  Def.'s COMF ¶ 6.

On August 30, 2016, Defendant first notified GEICO and reported a claim for damages sustained to the port engine of the vessel.  Pl's SOMF ¶ 10; Def.'s COMF ¶ 10; Answer with Countercl. ¶ 67.  Sometime thereafter, the starboard engine again began exhibiting issues, including emitting excessive blue-white smoke.  Def.'s COMF ¶ 8.  Between September 2016 and February 2018, GEICO conducted an investigation into Defendant's supplemental claim for the starboard engine and initial claim for the port engine.  *Id*. ¶¶ 10-26.  In connection with the investigation, GEICO inspected the vessel on several occasions, including September 28, 2016, November 9, 2016, and November 10, 2017.  *Id*. ¶¶ 11, 13, 21.  Subsequent to the initial two inspections but prior to the last inspection, Defendant removed and replaced the vessel's starboard and port engines in their entirety in December 2016.  *See* ESI Preliminary Investigation Report, annexed as Ex. D to Def.'s COMF, at 14.  GEICO provided Defendant with a

supplemental and final payment of $17,391.51 on February 16, 2017 for damage to the starboard

engine.  *See* Cancelled Check dated Feb. 16, 2017, annexed as Ex. U to Def.'s COMF.

On February 8, 2018, GEICO provided Defendant with a report of its findings and

conclusions from the investigation of Defendant's claims (the "Report").  Def.'s COMF ¶ 26;

February 8, 2018 Report, annexed as Ex. S to Def.'s COMF.  Although it is unclear from the

record exactly when Defendant submitted his losses from the replacement of the engines,

Plaintiff advised in the February 8, 2018 Report that it declined to indemnify Defendant for the

replacement cost of the engines.  Def.'s COMF ¶ 26.  The February 8, 2018 Report provided in

pertinent part

> [T]hat the decision to proceed with the replacement of Mr. Mandel's
> engines was made at his direction and not in accordance with the previous
> settlements issued. . . .
>
> As such, the invoices [Mr. Mandel has] forwarded . . . for the replacements
> of both engines and auxiliary components are declined at this time.
> [GEICO's expert] indicates that these invoices do not represent, as set forth
> by the policy, a reasonable cost of repair, and instead constitute betterment.
> These invoices also include replacement of parts which never sustained
> damage as a result of this loss.

February 8, 2018 Report at 3.

On February 26, 2018, GEICO provided Defendant with a payment of $23,238.11 for

damage to the port engine.  Pl.'s SOMF ¶ 11; Def.'s COMF ¶ 28.  Approximately 14 months

later, on April 15, 2019, Defendant renewed his demand for the cost of replacing the vessel's

starboard and port engines.  *See* April 15, 2019 Demand Letter, annexed as Ex. A to Def.'s

COMF; Corteselli Decl. ¶ 8.  Defendant requested $213,494.29 which represented the costs

incurred for replacing the engines, less the payment of $23,238.11 received on February 26, 2018

for the damage to the port engine.  *See id*. at 3.  Defendant further advised that he would pursue

litigation over the matter if not paid for the replacement of the engines.  *Id*.  In response, GEICO

commenced the instant action on May 24, 2019, to obtain a judicial declaration that Defendant is not entitled to coverage for claimed losses for which GEICO has not already indemnified Defendant. *See generally* Compl.  On July 1, 2019, Defendant filed an Answer with Counterclaims.  *See generally* Countercl.  The next day, Defendant made a formal request to GEICO for appraisal under the "Arbitration and Dispute" provision of the Yacht Policies which provides in pertinent part as follows:

> If you have met the requirements and conditions of the policy, and if the amount of a covered loss is still in dispute, you or [GEICO] may demand an appraisal of such loss . . . .  The appraisal and dispute process must be complete within 90 days of the date first demanded, unless extended by agreement of all parties.

Def.'s COMF ¶ 29; 2015-2016 Yacht Policy at 7; 2016-2017 Yacht Policy at 7.

On August 1, 2019, GEICO denied Defendant's request for an appraisal.  *See* Coverage Letter dated August 1, 2019, annexed as Ex. W to Def.'s COMF [DE 13-30].  GEICO took the position that the appraisal and dispute process was inapplicable because there was a dispute as to coverage in the first instance rather than a dispute as to amount of a covered loss.  *Id*.

## C.  Procedural History

On May 24, 2019, GEICO commenced this insurance coverage action against Defendant Mandel.  *See generally* Compl.  The Complaint asserts three causes action.  *Id*.  Each cause of action is based on a distinct provision of the Yacht Policies and seeks a declaratory judgment that Defendant is not entitled to coverage under the subject policy for certain claimed and/or additional, supplemental, or consequential losses for which Plaintiff has not already indemnified Defendant arising from the damage to the vessel's engines.  *Id*. ¶¶ 36, 42, 47, 52.  The third cause of action is premised on the "Legal Action Against Us" time limitation provisions of the

Yacht Policies which preclude the insured from bringing legal action against the insurer for any claim or loss after one year of "the date of loss or damage." *Id.* ¶¶ 48-52.

On July 1, 2019, Defendant filed his Answer with Counterclaims which assert claims for breach of contract and "bad faith." *See generally* Countercl.  Defendant asserts that GEICO breached the Yacht Policies and engaged in bad faith by, among other things:  (1) paying Defendant an amount less than that which the Yacht Policies provide; (2) negligently and/or inadequately investigating Defendant's claims by withholding pertinent information regarding the damages sustained by the engines and discarding and mishandling evidence; and (3) instituting the instant action instead of pursuing the appraisal process option.  Answer with Countercl. ¶¶ 91-104.

On December 5, 2019, GEICO's fully briefed motion for partial summary judgment was filed.  *See* DE 13.  GEICO moves for summary judgment on its third cause of action and on Defendant's counterclaims for breach of contract and bad faith.  *Id.*  As noted, GEICO did not submit a response to Defendant's Rule 56.1 Counterstatement of Additional Material Facts but instead argues that the Court should disregard these additional facts because they are not material to the instant motion.  *See* Pl.'s Reply at 8-9.  Since the Court finds that several of these additional facts are either material to the issues raised in the instant motion or provide context for the resolution of these issues, the Court has included these facts.

Judge Feuerstein referred Plaintiff's motion for partial summary judgment to this Court for a Report and Recommendation as to whether the motion should be granted.  *See* Electronic Order dated December 6, 2019.

### III.   STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party bears the initial burden of establishing the absence of any genuine issue of material fact.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Mihalik v. Credit Agricole Cheuvreux North America, Inc.*, 715 F.3d 102, 108 (2d Cir. 2013); *Holcomb v. Iona Coll.*, 521 F. 3d 130, 137 (2d Cir. 2008).  To determine whether the moving party has satisfied this burden, the Court is required to view the evidence and all factual inferences arising from that evidence in the light most favorable to the non-moving party.  *Doro v. Sheet Metal Workers' Int'l Ass'n*, 498 F.3d 152, 155 (2d Cir. 2007); *Woodman v. WWOR-TV, Inc.*, 411 F. 3d 69, 75 (2d Cir. 2005).  In dispatching this task, a court need only consider admissible evidence.  *Porter v. Quarantillo*, 722 F.3d 94, 97 (2d Cir. 2013) (quoting *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997); *Hilaire*, 54 F. Supp. 3d at 251.

Where the movant shows a *prima facie* entitlement to summary judgment, "the burden shifts to the nonmovant to point to record evidence creating a genuine issue of material fact." *Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006); *Miller v. Nassau Health Care Corp.*, No. 09-CV-5128, 2012 WL 2847565, at *3 (E.D.N.Y. July 11, 2012).  "[T]he nonmovant cannot rest on allegations in the pleadings and must point to specific evidence in the record to carry its burden on summary judgment."  *Salahuddin*, 467 F. 3d at 273; *see McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 215 n.4 (2d Cir. 2006) ("[S]peculation alone is insufficient to defeat a motion for summary judgment."); *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 101 (2d Cir. 2001) ("Even where facts are disputed, in order to defeat summary judgment, the non-

moving party must offer enough evidence to enable a reasonable jury to return a verdict in its

favor.").  Summary judgment is mandated if the non-moving party fails to make a showing

sufficient to establish the existence of an element essential to that party's case and on which that

party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986);

*see Dobbs v. Dobbs*, No. 06-CV-6104, 2008 WL 3843528, at *5 (S.D.N.Y. Aug. 14, 2008) ("The

Court's goal should be to isolate and dispose of factually unsupported claims.") (internal

quotation marks omitted).


IV.   **DISCUSSION**

  A.   **Jurisdiction and Applicable Law**

  Pursuant to 28 U.S.C. § 1331, federal district courts have original jurisdiction over "any

civil case of admiralty or maritime jurisdiction."  *St. Paul Fire & Marine Ins. Co. v. Matrix

Posh, LLC*, No. 10-CV-4776, 2011 WL 13377651, at *3 (E.D.N.Y. Nov. 22, 2011) (citing *New

York Marine & Gen. Ins. Co. v. Tradeline*, 266 F.3d 112, 121 (2d Cir. 2001)).  "Federal

admiralty jurisdiction extends to cases involving marine insurance contracts."  *Id*.; *see also

Folksamerica Reinsurance Co. v. Clean Water of New York, Inc*., 413 F.3d 307, 315 (2d Cir.

2005) (internal quotation and citations omitted) ("As an insurance contract is maritime to the

extent that it is marine insurance, admiralty jurisdiction will exist over an insurance contract

where the primary or principal objective of the contract is the establishment of policies of marine

insurance."); *Pac. Growth S.A. v. Aon Corp.*, 2000 A.M.C. 152, 157, *available at* 1999 WL

787659, at *5 (S.D.N.Y. Sept. 30, 1999) (holding "hull and machinery insurance policies are

properly within admiralty jurisdiction because the subject matter of those contracts is the vessel

itself").  Here, the Court has admiralty jurisdiction over this action because it involves an

insurance coverage dispute under a marine hull insurance policy.

"With admiralty jurisdiction comes the application of substantive admiralty law." *Burke v. Quick Lift, Inc*., 464 F. Supp. 2d 150, 157 (E.D.N.Y. 2006) (citing *E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864 (1986)).  "Absent a specific federal rule, federal courts look to state law for principles governing maritime insurance policies." *Cunningham v. Ins. Co. of N. Am.*, 521 F. Supp. 2d 166, 178 (E.D.N.Y. 2006) (quoting *Commercial Union. Ins. Co. v. Flagship Marine Servs., Inc.*, 190 F.3d 26, 30 (2d Cir. 1999)).  "There is no specific federal rule governing construction of maritime insurance contracts." *St. Paul Fire*, 2011 WL 13377651, at *3 (quoting *Commercial Union. Ins. Co.*, 190 F.3d at 30).  The parties do not dispute the absence of a federal rule relating to interpretation of a time bar provision in a maritime insurance policy.  *See* Pl.'s Mem. at 6-7; Def.'s Opp'n at 5.  Therefore, the Court will apply New York law in interpreting the Yacht Policies because the policies were delivered to Defendant in New York [Answer with Countercl. ¶ 13], Defendant maintains both his business and a residence in New York [*id.* ¶¶ 6-7], and a substantial portion of the inspections and repairs appear to have been performed in New York [ESI Preliminary Investigation Report at 6-7].  *See, e.g., id*. (applying New York law to interpret a marine insurance contract);  *Rosano v. Freedom Boat Corp*., No. 13-CV-842, 2015 WL 4162754, at *3 (E.D.N.Y. July 8, 2015) (same); *Great Lakes Reinsurance (UK) PLC v. Fortelni*, 33 F. Supp. 3d 204, 208 (E.D.N.Y. 2014) (same); *Gfroerer v. Ace Am. Ins. Co*., No. 03-CV-0866, 2004 WL 2966173, at *3 (W.D.N.Y. Dec. 22, 2004), *aff'd*, 184 Fed. App'x 26 (2d Cir. 2006) (same).

## B.   One Year Time Limitation

GEICO moves for summary judgment on Count III of its Complaint which is premised on the Yacht Policies' time limitation provisions.  Geico seeks a declaration that Defendant is not entitled to coverage under the subject Yacht Policies for the claimed losses to the starboard and

port engines for which GEICO has not already indemnified Defendant because the "alleged damage to the starboard and/or port engines and/or additional, supplemental, and/or consequential losses arising therefrom occurred more than one year from the date of this Complaint and any claim by Defendant Mandel is barred as untimely."  Compl. ¶ 51-52; Plaintiff's Notice of Motion for Summary Judgment [DE 13]; Pl.'s Mem. at 2, 7-10.  Similarly based on the time limitations provision of the Yacht Policies, GEICO also moves for summary judgment on Defendant's counterclaims for breach of contract and breach of implied covenant of good faith and fair dealing on the grounds that the claims are untimely.  *See* Pl.'s Mem. at 10.

Although New York law generally provides a six-year statute of limitations for any action based upon a contractual obligation or liability, express or implied, *see* N.Y. C.P.L.R. § 213, parties to a contract may agree on a limitations period shorter than that prescribed by statute, *see Nikchemny v. Allstate Ins. Co.*, No. 16-CV-00407, 2016 WL 6082034, at *2 (E.D.N.Y. Oct. 17, 2016).  Indeed, C.P.L.R. § 201 explicitly permits a shorter limitations period where "prescribed by written agreement."  N.Y. C.P.L.R. § 201.  In the instant action, the Yacht Policies provide for a one-year limitation period.  The time limitation provisions at issue provide, "[w]ith respect to any claim or loss to insured property, the action must begin within one year of the date of loss or damage."  2015-2016 Yacht Policy at 11; 2016-2017 Yacht Policy at 11.

"New York courts have typically enforced insurance policies that include one-year limitations periods, provided they are reasonable and in writing."  *Franco Apparel Grp., Inc. v. Nat'l Liab. & Fire Ins. Co.*, No. 10-CV-8205, 2011 WL 2565287, at *3 (S.D.N.Y. June 28, 2011), *aff'd*, 481 Fed. App'x 694 (2d Cir. 2012) (citing *Carat Diamond Corp. v. Underwriters at Lloyd's, London,* 506 N.Y.S.2d 708, 709–710 (N.Y. App. Div. 1986) (collecting cases)); *see also Nikchemny v. Allstate Ins. Co.*, No. 16-CV-00407, 2016 WL 6082034, at *2 (E.D.N.Y. Oct. 17,

2016) ("Although these prescriptions are unenforceable when they provide for limitations periods which are unreasonably short, New York courts have consistently enforced provisions prescribing two year, and even one year, statutes of limitations in breach of contract actions."). Therefore, the central inquiry before the Court is when the one-year limitations period began to run under the Yacht Policies. Specifically, that inquiry turns on the meaning of the operative contractual phrase -- "the action must begin within one year of the date of loss or damage."

GEICO contends that the limitation period began to run from the date the damage occurred to the starboard engine on December 2015 and the port engine on July 2016. *See* Pl.'s Mem. at 7-10. Since Defendant's counterclaims were filed on July 1, 2019, more than three years after the damage occurred to the engines, Plaintiff contends the counterclaims are time-barred. *Id*. In opposition to the motion, Defendant relies on *Fabozzi v. Lexington Ins. Co.*, 601 F.3d 88, 93 (2d Cir. 2010) in arguing that where, as here, the language of the time limitation provision lacks the necessary specificity and precision, the limitations period begins to run from the time liability accrues, rather than the occurrence of the damage. *See* Def.'s Opp'n at 5-6. Defendant argues that liability began to accrue on its claim when GEICO instituted the instant action on May 24, 2019 and declined to commence the appraisal and dispute process on August 1, 2019. *Id*. at 10-11. In reply, GEICO maintains that the language of the time limitation provision at issue is sufficiently specific in light of the prefatory language "[w]ith respect to any claim or loss to insured property" and use of the term "loss" throughout the Yacht Policies. Pl.'s Reply at 7. Further, even assuming that the operative provision is not sufficiently precise and that the time limitation period begins to run from the time liability accrues, GEICO contends that any action based on Defendant's claims or losses arising from the replacement of the engines is nonetheless time-barred because the latest date Defendant's claim accrued was on February 8,

2018 -- the date GEICO ultimately declined to pay for the cost of replacing the engines.  Pl.'s

Reply at 4.

In *Fabozzi,* the Second Circuit addressed the language of contractual time limitations

contained in insurance contracts.  601 F.3d at 93.  There, the insurance contract contained a

limitations clause that required the plaintiffs to bring suit "within two years *after the date of the*

*loss*."  *Id.* at 90 (emphasis added).  When the plaintiffs submitted an insurance claim for damage

to their home, the insurance company investigated the claim for more than two years before

ultimately denying coverage.  *Id.* at 89.  The plaintiffs filed suit three months later.  *Id.* at 90.

Although more than two years had elapsed since the plaintiffs became aware of the damage, the

Second Circuit held that the action was timely because the contractual limitations period referred

to the date the claim accrued rather than the date the damage occurred.  *Id.* at 93.  The Second

Circuit reasoned that the limitations period began to run from the time the claim accrued because

the contractual language "after the date of loss" was too generic to begin the limitations period

from the date the damage occurred.  *Id*.

In so holding, the Second Circuit recognized that, under New York law, "generic

language setting a contractual limitations period should be interpreted to start the clock not at the

time of the accident itself but only once 'the right to bring an action exists'— that is, once all

conditions precedent have been met."  *Id*. at 91 (quoting *Steen v. Niagara Fire Ins. Co.,* 89 N.Y.

315, 322–23 (1882)); *Hirth v. Am. Ins. Co.*, 15 CIV. 3245, 2016 WL 75420, at *4 (S.D.N.Y. Jan.

7, 2016.  As an example of such "generic language," the Second Circuit in *Fabozzi* cited a

policy provision which required an action to be brought within a certain period "after loss or

damage."  *Id.* (citing *Margulies v. Quaker City Fire & Marine Ins. Co.,* 276 A.D. 695, 97

N.Y.S.2d 100, 103–04 (1950)); *see also Steen,* 89 N.Y. at 321–22 (interpreting language that

15

required suit be brought within a "term of twelve months next after the loss or damage shall

occur" as referring to the date on which the cause of action accrued, not the date of the fire that

caused the loss).  However, the Second Circuit recognized that parties could contract out of this

default rule and agree to start the limitations period on the date of the accident by using

"exceptionally clear" or "highly specific" language.  *Id.* at 91–92.  Two examples of policies

containing such language noted by the Second Circuit include:  (1) a policy which required an

action to be brought within a certain period after the "inception of the loss"[2] *id.* at 91

(citing *Proc v. Home Ins. Co.,* 17 N.Y.2d 239, 270 N.Y.S.2d 412, 217 N.E.2d 136 (1966)); and

(2) a policy which required an action to be brought within a certain period "after the date on

which the direct physical loss or damage occurred," *id.* at 92 (citing *Myers, Smith & Granady,*

*Inc. v. N.Y. Prop. Ins. Underwriting Ass'n,* 85 N.Y.2d 832, 623 N.Y.S.2d 840, 647 N.E.2d 1348

(1995)).

 In the instant action, the time limitation provisions at issue require that "action must

begin within one year of the *date of loss or damage.*"  2015-2016 Yacht Policy at 11; 2016-2017

Yacht Policy at 11 (emphasis added).  As the Second Circuit made clear in *Fabozzi,* a reference

to the date of "loss or damage," without more, constitutes "generic" language understood to refer

to the date of accrual of the cause of action, not the date on which the physical damage occurred.

*See* 603 F.3d at 93; *Koppelman v. Standard Fire Ins. Co.*, No. 05-CV-2496, 2008 WL 789882, at

*6 (E.D.N.Y. Mar. 21, 2008) (finding that the time limitation to bring suit began from date loss

accrued where the insurance policy required action to be brought "within one year after loss or

damage occurs"); *Myers v. Cigna Property & Casualty Insurance Co.*, 953 F. Supp. 551

---

[2] The Second Circuit described this phrase as a "term of art" which fixes the
limitations period from the date of the accident.  *Fabozzi,* 601 F.3d at 91-92.

(S.D.N.Y. 1997) (finding that the time limitation to bring suit began from date liability accrued where the insurance policy required that "any suit against us must be commenced within one year of the date of the loss or damage"). The Court is not persuaded that the prefatory language "[w]ith respect to any claim or loss to insured property" or the Yacht Policies use of the term "loss" elsewhere provides sufficient specificity to the meaning of the word "loss" as argued by GEICO.

As an initial matter, the Court notes that GEICO fails to sufficiently explain how the prefatory language clears up an ambiguity arising from the language "date of loss or damage." Nonetheless, the court in *Myers* rejected a similar argument where the time limitation provision of the policy contained nearly identical language to that at issue here. 953 F. Supp. at 555, n.4. In *Myers*, the policy provided that "with respect to any claim or loss to insured property, any suit against us must be commenced within one year of the date of the loss or damage." *Id*. at 553. There, the insurer argued that the prefatory language, "with respect to any claim or loss to insured property," indicates that the phrase "date of loss or damage" refers specifically to the loss or damage to the "insured property" as opposed to the insured generally. *Id*. at 555, n.4. The court found that the prefatory language construed with the following provision -- "with respect to any other claim for loss, no suit may be brought against us until the amount of the covered person's obligation to pay has been determined by final judgments after trial or by written agreement signed by you, us, and the claimant" -- indicated that the prefatory language was clearly meant to distinguish between claims brough by the insured under the policy and claims brought against the insured covered by the policy. *Id*. at 555, n.4. As such, the court found that the policy should be "construed to mean that the one-year limitation to bring suit begins to run after the claim became due and payable as opposed to the date of loss or damage to the insured

17

property." *Id*. at 555.  The claim became due and payable on the date the insurer's liability accrued.  *Id*. at 556.

Here the prefatory language cited by GEICO is immediately followed by a similar provision to that in *Myers* which provides that "with respect to any other claim or loss, no legal action may be brought against us until we agree in writing that the insured has an obligation to pay a specified amount, or until the amount of that obligation has been finally determined by judgment after trial."  2015-2016 Yacht Policy at 11; 2016-2017 Yacht Policy at 11.  Therefore, the Court is not persuaded that the prefatory language serves any other purpose than to distinguish between claims brough by the insured under the policy and claims brought against the insured covered by the policy.  *See Myers*, 953 F. Supp. at 555, n.4.

Further, the Yacht Policies use of the term "loss" elsewhere does not provide sufficient specificity in order to conclude that the term refers to the date the damage incurred instead of the accrual of the claim.  As was the case in *Fabozzi*, the Yacht Policies' definitions section does not define the term "loss."  *See* 601 F.3d at 93.  While "loss" is frequently used throughout the Yacht Policies in various contexts, these uses still render the meaning ambiguous.  For example, as GEICO noted, the "Types of Losses Covered" provision indicates that the term "loss" encompasses "property damage to the insured boat."  2015-2016 Yacht Policy at 6; 2016-2017 Yacht Policy at 6.  However, the "Our Right to Recover" may be reasonably construed to refer to losses in addition to those physically sustained to the "insured boat."  *Id*.  The "Our Right to Recover" provision provides that Defendant "may have the right to recover from another party who is responsible for [Defendant's] loss or loss to the insured boat."  *Id*.  This provision indicates that the term "loss" encompasses not only "loss to the insured boat" (*i.e.,* property damage to the insured boat) but other loss sustained by the Defendant.  Therefore, "loss"

encompasses a broader meaning which was not defined by the Yacht Policies. Because "any ambiguity in an insurance policy should be resolved in favor of the insured," *McCostis v. Home Ins. Co.*, 31 F.3d 110, 113 (2d Cir. 1994), the Court concludes that the time limitation provision at issue is not triggered until liability accrues. *See Fabozzi*, 601 F.3d at 93 (finding that the time limitation provision began when the insured's claim accrued where the term "loss" was undefined and other uses of the term in the contract rendered it ambiguous); *T.N. Metro Holdings, I, LLC v. Commonwealth Ins. Co.*, No. 11-CV-6063, 2016 WL 7243554, at *6 (S.D.N.Y. Dec. 14, 2016) (finding that the insurance policy's time limitation provision began when the insured's claim accrued where the term "loss" was determined to be generic and ambiguously used); *No Hero Enterprises B.V. v. Loretta Howard Gallery Inc.*, 20 F. Supp. 3d 421, 426 (S.D.N.Y. 2014) (finding that the insurance policy's time limitation provision began when the insured's claim actually accrued where the term "loss" was used in manner to suggest more than one meaning).

What remains is a determination of when liability accrued. "[A] cause of action for breach of an insurance contract accrues at the time of breach under New York law." *First Roumanian Am. Congregation v. GuideOne Mut. Ins. Co.*, 862 F. Supp. 2d 293, 305–06 (S.D.N.Y. 2012) (citation omitted); *Fabozzi*, 601 F.3d at 93 (citing *Med. Facilities, Inc. v. Pryke*, 62 N.Y.2d 716, 717, 476 N.Y.S.2d 532, 465 N.E.2d 39 (1984)). Defendant asserts that GEICO breached the Yacht Policies by paying Defendant an amount less than that which the policies provided and negligently and/or inadequately investigating Defendant's claims. Countercl. ¶ 88-89. First, as it relates to GEICO's purported failure to indemnify Defendant for the cost of replacing the engines, Defendant argues that liability began to accrue when GEICO instituted the instant action because GEICO "never expressly disclaimed coverage for the engine

claims" until filing the instant action.  Def.'s Opp'n at 8.  Prior to that date, Defendant argues that there was a dispute as to the amount owed under the Yacht Policies but not a dispute as to coverage.  *Id*. at 8-11.  Defendant, however, does not sufficiently explain how this distinction is consequential to the Court's analysis.

Nonetheless, it is undisputed that on February 8, 2018 GEICO advised Defendant that the "the invoices [Defendant has] forwarded . . . for the replacements of both engines and auxiliary components are *declined* at this time."  February 8, 2018 Report at 3 (emphasis added).  "It is only when an insurer declines to pay a covered loss for which the insured has requested payment that the insurer has breached the insurance agreement by failing to perform its contractual obligations."  *First Roumanian Am. Congregation v. GuideOne Mut. Ins. Co.*, 862 F. Supp. 2d 293, 305–06 (S.D.N.Y. 2012) (citing *Cont'l Cas. Co. v. Stronghold Ins. Co., Ltd.,* 866 F. Supp. 143, 145 (S.D.N.Y. 1994)).  Therefore, Defendant's breach of contract claim based on GEICO's failure to indemnify him for the cost of replacing the engines accrued on February 8, 2018. Indeed, any action based on GEICO's denial of payment for the cost of replacing the engines accrued on this date.

Second, as it relates to the negligent and/or inadequate investigation of Defendant's claims, these investigations occurred on September 28, 2016, November 9, 2016, and November 10, 2017.  *See* Def.'s COMF ¶¶ 11, 13, 19.  Therefore, the latest date on which Defendant's breach of contract claim based on these investigations accrued was November 10, 2017.  Since Defendant's breach of contract claim was filed on July 1, 2019, more than one year after liability accrued on each aspect of the claim, it is time-barred under the Yacht Policies' time limitation provisions.  *Id*.

Defendant also argues that GEICO breached the Yacht Policies when it improperly declined Defendant's request to commence the appraisal and dispute process. *See* Def.'s Opp'n at 11-12.  However, the Court need not address this argument because this assertion was not pleaded in Defendant's Counterclaims, nor could it have been since GEICO denied this request on August 1, 2019, one month after Defendant filed his Counterclaims. *See* August 1, 2019 Coverage Letter.

With respect to Defendant's claim for "bad faith," GEICO contends that it is cognizable as a claim for breach of the implied covenant of good faith and fair dealing which is not distinct from Defendant's breach of contract claim. *See* Pl.'s Mem. at 10.  Therefore, GEICO argues that Defendant's claim for breach of the implied covenant of good faith and fair dealing is barred by the same time limitation provisions as his breach of contract claim. *Id.*  Since New York law "does not recognize … an independent cause of action for bad faith denial of insurance coverage," the Court construes Defendant's "bad faith" claim as a claim for breach of the implied covenant of good faith and fair dealing. *Young Men's Christian Ass'n of Plattsburgh v. Philadelphia Indem. Ins. Co.*, No. 18-CV-0565, 2018 WL 6267923, at *6 (N.D.N.Y. Nov. 30, 2018) (citing *Woodhams v. Allstate Fire and Cas. Co.*, 748 F. Supp. 2d 211, 223 (S.D.N.Y. 2010), *aff'd*, 453 Fed. App'x 108 (2d Cir. 2012)); *see also Polidoro v. Chubb Corp.,* 386 F. Supp. 2d 334, 338 (S.D.N.Y. 2005) ("Plaintiff's claim for bad-faith conduct in handling insurance claims is not legally-cognizable under New York law.").

"Under New York law, parties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013) (quoting *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 80 (2d Cir. 2002)).  "New York law ... does not recognize a

21

separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Advanced Water Techs., Inc. v. Amiad U.S.A., Inc.*, No. 18-CV-5473, 2020 WL 2060358, at *3 (S.D.N.Y. Apr. 29, 2020). Defendant asserts that GEICO breached the implied covenant of good faith and fair dealing by (1) negligently and/or inadequately investigating Defendant's claims [Countercl. ¶¶ 94-06], (2) failing to promptly conclude its investigation of Defendant's claim regarding the port engine [*Id.* ¶ 99], and (3) commencing the instant action instead of opting to pursue the appraisal and dispute process under the Yacht Policies [*Id.* ¶ 102]. Because GEICO's alleged negligent and/or inadequate investigation of Defendant's claims also forms the basis of Defendant's breach of contract claim, it does not constitute a separate cause of action and is time-barred for the same reasons set forth above. However, the two remaining allegations are distinct from those that form the basis of Defendant's breach of contract claim. Therefore, the Court must determine whether Defendant's breach of implied covenant of good faith and fair dealing claim based on these remaining allegations is time-barred.

With respect to Defendant's breach of implied covenant of good faith and fair dealing Counterclaim based on GEICO's failure to promptly conclude its investigation of the port engine claim, Defendant specifically takes issue with the length of the investigation "in that the payment was made approximately one and a half years after the [the claim] was reported." Countercl. ¶ 99. Based on this allegation, it is clear that Defendant interprets the date payment was made on his port engine claim, *i.e.*, February 26, 2018, as the date the investigation was concluded. *See id.* As such, the latest date Defendant's breach of implied covenant of good faith and fair dealing Counterclaim based on the length of the investigation of the port engine claim could have accrued was February 26, 2018. Since this counterclaim was filed on July 1, 2019, more than

one year after liability accrued on this aspect of Defendant's Counterclaim, it is time-barred under the Yacht Policies' time limitation provisions.

However, as it relates to Defendant's breach of implied covenant of good faith and fair dealing claim based on Plaintiff's commencement of the instant action as opposed to the optional appraisal and dispute process under the Yacht Policies, the Court finds that this portion of Defendant's Counterclaim is not time-barred.  Because Defendant's theory of liability asserts that the filing of this action itself constitutes the breach of implied covenant of good faith and fair dealing, this Counterclaim is not time-barred.

Accordingly, the Court recommends to Judge Feuerstein that GEICO's motion for partial summary judgment on Count III of its Complaint and Defendant's breach of contract counterclaim be GRANTED.  The Court further recommends that GEICO's motion for summary judgment on Defendant's breach of implied covenant of good faith and fair dealing claim be GRANTED as to the those portions of the claim based on GEICO's alleged negligent and/or inadequate investigation and failure to promptly conclude its investigation of the port engine claim, but that the portion of the claim based on GEICO's commencement of the instant action -- as opposed to the optional appraisal and dispute process under the Yacht Policies – be DENIED.

## V.   CONCLUSION

For the foregoing reasons, the Court respectfully recommends to Judge Feuerstein that Plaintiff's motion for partial summary judgment on Count III of its Complaint and Defendant's breach of contract counterclaim be GRANTED.   The Court further respectfully recommends that Plaintiff's motion for partial summary judgment as to Defendant's breach of the implied covenant of good faith and fair dealing Counterclaim (1) be GRANTED as to the those portions of the Counterclaim based on Plaintiff's alleged negligent and/or inadequate investigation and

failure to promptly conclude its investigation of the port engine claim, but (2) the portion of the claim based on GEICO's commencement of the instant action -- as opposed to the optional appraisal and dispute process under the Yacht Policies – be DENIED.

## VI.   OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  *See also* FED. R. CIV. P. 6(a), (e).  Such objections by an attorney of record shall be filed with the Clerk of the Court via ECF.  **A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Sandra J. Feuerstein.  Any requests for an extension of time for filing objections must be directed to Judge Feuerstein prior to the expiration of the 14-day period for filing objections**.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).


SO ORDERED:

Dated: Central Islip, New York
      September 18, 2020

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge